UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROSEMARY E. BONAGUIDE, and CATHERINE HUGHES | : . | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:11-cv-01161 (JCH) |
| | : | |
| v. | : | |
| | : | |
| REGIONAL SCHOOL DISTRICT NO. 6, | : | JULY 26, 2012 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (Doc. No. 11) AND SUPPLEMENTAL MOTION TO DISMISS (Doc. No. 15)**

**I.   INTRODUCTION**

Plaintiffs Rosemary Bonaguide and Catherine Hughes were paraprofessionals employed by defendant, Regional School District No. 6, and assigned to work with autistic students. Plaintiffs brought this action against defendant for wrongful termination in violation of public policy based on their December 2010 discharge. Plaintiffs allege defendant terminated them in retaliation for addressing concerns on behalf of their students, in contravention of the public policy expressed in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq. (the "IDEA") and Conn. Gen. Stat. § 10-76a – 10-76i.

The defendant has filed a Motion to Dismiss ("Def. Mot. Dismiss") (Doc. No. 11) and a Supplemental Motion to Dismiss ("Def. Supp. Mot. Dismiss") (Doc. No. 15) for both counts of the Complaint (Doc. No. 1). In reviewing those Motions, the court questioned whether it had jurisdiction and issued a notice to the parties requesting discussion on the matter at oral argument (Doc. No. 33).

The court does not reach the merits of the defendant's Motions to Dismiss for Failure to State a Claim. Instead, the court has determined that it does not have subject matter jurisdiction over the causes of action asserted here. Plaintiffs' claims for wrongful termination are more properly brought before Connecticut state court, and the court remands the case.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the pleader. See e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiffs' favor. See e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

### A.   Subject Matter Jurisdiction

A district court properly dismisses a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing whether it lacks subject matter jurisdiction, the court "accept[s] as true all material allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the Complaint. Makarova, 201 F.3d at 113; see also Malik v.

Meissner, 82 F.3d 560, 562 (2d Cir.1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993).

    B. Failure to State a Claim

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 986–87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## III. FACTUAL BACKGROUND

The court accepts as true the following allegations from the Complaint for purposes of the Motion to Dismiss. Plaintiffs Rosemary Bonaguide and Catherine Hughes were both employed as paraprofessionals by the defendant and worked at

3

Goshen Elementary School. Beginning in September 2010, each plaintiff was assigned to a different autistic student to facilitate his or her academic development. These students were aged six and three, respectively. Both students were non-verbal, and they evidenced an array of behavioral and communicative problems.

Plaintiffs allege that they requested a meeting with the Principal of Goshen Elementary School in June 2010 to discuss the students' needs and educational goals pursuant to their Individual Education Plan ("IEP").[1] No meeting took place. Plaintiffs also claim to have requested access to the children's IEPs for preparation purposes, but were not granted access.

Plaintiffs allege that the environment defendant provided for the students was inadequate and claim that they were never provided a changing table for the students, who were not bathroom trained, and were denied their request to teach the students sign language to facilitate communication and provide the students with special sensory-related tools. They further allege that defendant failed to provide a safe environment and effective safety procedures for the students, who had a propensity to run away. Plaintiffs claim they were not given training in physical restraints.

Additionally, Ms. Hughes' assigned student, "EH," expressed further behavioral problems. Beginning in September, EH began spitting upon entering the classroom. Though other teachers at the school, including the Certified Special Education Teachers, were familiar with the student's behavioral issues, Ms. Hughes was not given

---

[1] An IEP is an individualized, written plan prepared annually to address the particular educational needs of a disabled child. See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 62 (2d Cir. 2000). The plan is prepared by an "IEP Team" composed of, among others, the child's parents, a school official qualified in special education, the child's teacher, and, where appropriate, the child. Id. Plaintiffs do not appear to allege that they were part of the IEP Team for the child to whom they were each assigned.

additional training or preparation for dealing with the student. One of the Special Education Teachers apologized to Ms. Hughes for putting her in the difficult situation of having to encounter the student without advance warning of that student's behavioral problems.

In late October 2010, the plaintiffs were called into a meeting with the Principal and the school Director of Special Education Services to address plaintiffs' concerns. During this meeting, the plaintiffs were told their inquiries were creating a "toxic environment" at the school. In November, the plaintiffs were asked to complete a survey regarding the various concerns the plaintiffs had for the students.

According to Board of Education minutes from December 6, the Board of Education's Business Manager reported in a meeting that state funding for the school district was the "same as last year." On December 8, the Chairman of the Board of Education reported in a meeting that "the financial situation for Reg. 6 seems to be in good shape at this time." On December 17, defendant terminated the plaintiffs, citing budgetary issues.

## IV.   DISCUSSION

Defendant contends that both counts of plaintiffs' Complaint fail to state a plausible claim for wrongful discharge under Connecticut common law because: (1) plaintiffs fail to identify an important and clearly articulated public policy; and (2) plaintiffs' wrongful discharge claims are preempted by Conn. Gen. Stat. § 31-51m, Connecticut's whistleblower statute. However, this court does not reach the merits of these claims because it finds that it lacks subject matter jurisdiction over the state law causes of action asserted in plaintiffs' Complaint.

A. Subject Matter Jurisdiction

Before addressing the merits of defendant's arguments, this court faces a threshold question of whether it has subject matter jurisdiction. Neither party addressed this issue in their briefing, but this court can, and, indeed, has an obligation to, address issues of jurisdiction sua sponte. See Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't. of Health & Human Servs., 607 F.3d 951, 955 (2d Cir. 2010).

Plaintiffs invoke the jurisdiction of this court in this non-diversity case under section 1331 of title 28 of the United States Code, which states that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Subject matter jurisdiction under section 1331 can be established in one of two ways. First, and most commonly, jurisdiction is conferred if a federal law creates a cause of action. Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27 (1983). Second, jurisdiction attaches when the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Id. at 28.

Plaintiffs do not contend that the IDEA creates a cause of action here. See Plaintiffs' Supplemental Objection to Defendant's Supplemental Motion to Dismiss ("Pls.' Supp. Obj'n") at 14. "There are no 'violations' of law or remedies available to the Plaintiffs under IDEA or the corresponding State Statute, merely a set of procedural safe guards for parents, students and schools to determine what the appropriate public

education should be." Id. (quoting Def. Supp. Mot. Dismiss at 5) (capitalization in original).[2]

Instead, plaintiffs rely on the second, less common form of establishing "arising under" federal jurisdiction: that the state law cause of action necessarily depends on a substantial question of federal law. To make this showing, plaintiffs argue that the IDEA outlines an important public policy in favor of assuring the educational rights of disabled children, and that this public policy provides the basis for wrongful termination claims under Connecticut common law. See Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471 (1980) (creating common law exception to bar on wrongful termination suits for discharge of at-will employees in cases where such discharge violates an important public policy).[3]

In this case, the federal law at issue -- the IDEA -- is mirrored to a significant degree by its state law counterpart. Indeed, Conn. Gen. Stat. § 10-76a – 10-76i was enacted in order to qualify Connecticut for federal funding under the IDEA, and the IDEA incorporates relevant Connecticut state education law. See Bay Shore Union Free School Dist. v. Kain, 485 F.3d 730, 733 (2d Cir. 2007); J.C. ex rel. C. v. New Fairfield Bd. of Educ., No. 3:09-cv-1591, 2011 WL 1322563, at *22 (D. Conn. March 31,

---

[2] In fact, a suit for money damages is simply unavailable under the IDEA, even for individuals expressly provided causes of action under the law. See Polera v. Bd. of Educ., 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy – as contrasted with reimbursement of expenses – is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully constructed procedure for administrative remedies").

[3] Whether the Connecticut state common law tort of wrongful termination can properly countenance public policy espoused by a federal statute is itself a question of state law. In Connecticut, courts considering wrongful termination claims may sometimes consider public policy expressed in federal laws. See Faulkner v. United Tech. Corp., 240 Conn. 576, 585 (1997) ("[W]e do not agree with the defendant that Sheets requires a violation of state public policy in order for plaintiff to state a cause of action. Rather, Sheets and its progeny refer generally to violations of public policy as expressed in explicit statutory or constitutional provisions, or judicial decisions.") (emphasis in original).

2011) ("Connecticut enacted its own special education statute in order to align itself with the IDEA and thereby maintain eligibility for federal funding.  In order to qualify for this funding, several provisions of Connecticut's statute make direct reference to the IDEA." (internal citations and quotations omitted)).

In assessing whether plaintiffs' common law wrongful termination claim "necessarily" depends on IDEA, this court looks to Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988).  In Christianson, the Supreme Court observed that, if particular cause of action claim can potentially be supported by different theories of how that claim should be invoked and, if one of those theories does not depend on federal law, then federal jurisdiction does not attach.  Id. at 809.  In this case, while IDEA may indeed establish a public policy sufficient to permit a common law wrongful termination claim under Connecticut law (something this court does not decide), Conn. Gen. Stat. § 10-76a – 10-76i might also establish such a public policy.  If the theory of a statutorily created public policy can independently justify the pleaded causes of action, then this court lacks subject matter jurisdiction.  See e.g., Rains v. Criterion Systems, Inc., 80 F.3d 339, 345 (9th Cir. 1996) (finding that a district court lacked subject matter jurisdiction over a state law wrongful termination claim even when the state law claim was supported by a theory based on federal law because the state constitution and a state statute independently provided a similar public policy).

IDEA and Connecticut's implementing legislation are not identical, but they clearly implicate similar policy considerations.  Plaintiffs' Complaint pairs both statutes together to establish a unified theory of an "important Public Policy."  See Complaint at 9.  At oral argument, plaintiffs conceded that the Connecticut statute expresses a public

policy, and that their complaint invoked that public policy under the Sheets doctrine. It is clear to this court that, while plaintiffs' wrongful termination claims might involve some interpretation of federal law, plaintiffs have also pled an entirely state-law-based theory of wrongful termination that could lead potentially to relief under the Sheets doctrine. As a result, the causes of action do not necessarily depend on interpretation of federal issues, and this court lacks subject matter jurisdiction. See Christianson, 486 U.S. at 809.

Other courts that have addressed whether they have subject matter jurisdiction over wrongful termination claims based on violations of public policy expressed in federal laws have also found jurisdiction to be lacking. See Long v. Bando Mfg. of America, Inc., 201 F.3d 754, 760 (6th Cir. 2000) (finding no federal jurisdiction over a state wrongful termination claim based on alleged violations of the public policy expressed in federal statutes because the complaint also put forth public policy violations based on state statutes); see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 818 (4th Cir. 2004) (finding no federal jurisdiction over a wrongful termination claim based on alleged violations of the First Amendment of the United States Constitution and the laws of South Carolina because the plaintiff also asserted a state law-based theory under which a wrongful termination claim could supported); Willy v. Coastal Corp., 855 F.2d 1160, 1171 (5th Cir. 1988) ("[I]n this Texas common law wrongful discharge case, the role of issues of federal law is more collateral than in the forefront. Further, other issues of Texas law are substantially implicated in all theories of the wrongful discharge claim."); Drake v. Cheyenne Newspapers, Inc., 842 F. Supp. 1403, 1412 (D. Wyo. 1994) ("[T]he Court could completely ignore any reference to the First

9

Amendment without affecting plaintiffs' chance of recovery because the plaintiffs could rely on the Wyoming Constitution . . . as their source of public policy."); Gardiner v. St. Croix Dist. Governing Bd. Of Directors, --- F. Supp. 2d ---, No. 2012-027, 2012 WL 1153286, *7 (D. V.I. Mar. 30, 2012) (dismissing a wrongful termination claim that cited both the Virgin Islands Wrongful Discharge Act and the Fourteenth Amendment).

Even beyond the issue of the necessity of an interpretation of federal issues, it is also doubtful that the federal issues implicated here are substantial enough to justify federal jurisdiction. See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005). In Grable, the Supreme Court found a substantial issue of federal law implicated in a case involving the action of a federal agency (the IRS), and an interpretation of the federal tax code that would settle a large number of other tax cases. See id. at 315. However, Grable cautioned that the exercise of federal jurisdiction in a particular case should be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable, 545 U.S. at 313-14. In this case, not only are the potential implications of a generalized interpretation of IDEA's public policy pronouncements for purposes of wrongful termination claims far less than those contemplated by Grable, but the IDEA itself limited its grants of private rights of action to exclude parties like the plaintiffs. See Polera, 288 F.3d at 486.

At least one court to have considered whether or not a wrongful termination claim implicating the IDEA is "substantial" enough to merit federal jurisdiction has found such a claim lacking. See Hemberger v. Mansfield Twp. Bd. Of Educ., No. 07-3805, 2007 WL 3243924 (D. N.J. Nov. 2, 2007) (remanding to state court a wrongful termination

case involving a paraprofessional who reported the mistreatment of autistic children to the New Jersey Division of Youth and Family Services and invoked the IDEA).  While it is true that another court in this district entertained a wrongful termination claim involving an invocation of the IDEA's public policy, that case also contained claims under section 1983 of title 42 of the United States Code, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  See <u>Sturm v. Rocky Hill Bd. Of Educ.</u>, No 3:03-cv-666, 2005 WL 733778 (D. Conn. March 29, 2005).  No such additional federal claims are present in plaintiffs' Complaint.  This court sees no basis for finding jurisdiction.

## V.   CONCLUSION

For the reasons stated above, this court terminates defendant's Motion to Dismiss (Doc. No. 11) and Supplemental Motion to Dismiss (Doc. No. 15) for lack of jurisdiction, and remands the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of July, 2012.

    /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge